**CORNUCOPIA, INC.,
Plaintiff-Appellant,**

v.

**Lee H. WAGMAN and Mark Zorensky,
Defendants-Respondents.**

No. 49834.

Missouri Court of Appeals,
Eastern District,
Division Two.

April 8, 1986.

Motion for Rehearing and/or Transfer
Denied May 13, 1986.

Application to Transfer Denied
June 17, 1986.

Ralph W. Kalish, St. Louis, for plaintiff-appellant.

Thomas C. Walsh, St. Louis, for defendants-respondents.

REINHARD, Judge.

Plaintiff appeals from a judgment after a court trial denying the injunctive relief sought in its trademark infringement and unfair competition suit. We affirm.

Plaintiff's petition is in four counts, purporting to set forth in Count I a claim of unfair competition; in Count II a claim of common law trademark infringement; in Count III a claim of common law service mark infringement; and in Count IV a claim under § 417.051, RSMo 1978. For each count plaintiff alleges improper use by the defendants of the word "cornucopia." Plaintiff originally sought actual and punitive damages as well as injunctive relief, but later waived its claim for compensatory damages and lost profits.

On appeal plaintiff has substantially narrowed the issues. In their simplest terms, the principal questions presented to us are whether plaintiff's use of "cornucopia" is protectible under Missouri common law and, if protectible, have defendants unfairly competed with plaintiff by their use of the word "cornucopia."[1]

Plaintiff is a Missouri corporation which conducts a retail operation offering a wide variety of products for sale, ranging from bulk coffee and prepackaged "gourmet" foods to housewares and kitchen accessories. Walter Smith, plaintiff's only shareholder, first opened a retail store in 1980, which he operated as a sole proprietorship. That store, originally called "The Outlet," was located in Kirkwood. It's name was changed twice, first to "The In and Outlet," then, in October 1982, to "Cornucopia." Smith incorporated his business under that name in March 1983, and opened a second retail store in June 1984 at Laclede's Landing.

Smith testified at trial that he chose the name "cornucopia" because it would be a "catch-all" term, allowing him to carry any type of merchandise. He testified by deposition that: "To me, [cornucopia] means a combination of, of many things," and "... it has to do with a variety of things, which was the reason I choose the name, as you can see by what I carry in the store." Smith made no attempt to register "cornucopia" under the Missouri Fictitious Name Act, or as a trademark or service mark, nor did he check the telephone directory for listings under "cornucopia." At the time of his selection of the name, Cornucopia Communications, Inc. conducted business in St. Louis and was listed under that name in the phone book.

The logo plaintiff has developed appears below:

This logo has been utilized by plaintiff in newspaper advertisements throughout the metropolitan St. Louis area and in other promotional activities, such as direct mail. Plaintiff spent a total of $8,856.77 on advertising and promotion in 1983, and reported total sales for that year of $147,535.15 as well as a net loss of $5,284.95. In its September 30, 1984, operating statement it reported year to date total sales of $145,601.72, a net profit of $2,819.18, and advertising expenditures of $3,431.81.

Defendants Lee Wagman and Mark Zorensky are partnership administrators for Crestwood Plaza Shopping Center, which contains more than 140 stores and is located on Watson Road in Crestwood, Missouri. This location is approximately five or six

---

1. Although it has not abandoned its claims of service mark or trademark infringement, plaintiff states at page 70 of its brief that "the paramount interest of appellant in this appeal is the protection of its trade name in its territory, the metropolitan St. Louis area, with respect to its business."

miles from plaintiff's Kirkwood store. In 1983, defendants began a $25,000,000 renovation project to upgrade and modernize Crestwood Plaza. As part of the renovation, a "food court" area on the bottom level of the mall was constructed, which included ten restaurants and several stores, such as "The Happy Cooker" and "The Market." [2] The restaurants share a common central seating area, a concept utilized in some malls in other parts of the country, but new to St. Louis. In February 1984, prior to completion of the renovation, defendants decided to call the "food court" area "cornucopia." [3] Wagman said the name was suggested by his wife, and that his children's school used the term in conjunction with its annual fund-raising auction. Wagman testified further that:

What inspired us was the seeming applicability of the name to describe this service we were providing at Crestwood for restaurants—a real wide variety of restaurants, ethnic and specialty foods, a fresh food market. A wide variety was a hard concept to convey in a word or an emblem or style, and we thought it was an appropriate name. I guess that was the inspiration.

He then contacted his attorneys for advice regarding the availability of "cornucopia" as a service mark. Since "cornucopia" was not registered as a service mark or trademark in Missouri, and Wagman was unaware of plaintiff's existence, he filed a service mark registration on May 30, 1984.[4] The logo utilized by defendants is shown below:

Wagman did not consult the telephone directory for listings under "cornucopia" prior to registering the service mark. Such an inquiry would have revealed that plain-

---

**2.** "The Market" has ceased operating at Crestwood Plaza. However, "The Second Story" now occupies some of that vacated retail space and offers bulk coffee, tea and gourmet candies.

**3.** We should perhaps point out that we have carefully examined the record and are aware that Crestwood Plaza's "food court" contains non-restaurant tenants. Our use of the term

"food court" is merely a convenient shorthand label.

**4.** Defendants do not rely on this service mark registration, and advised the trial court that they would withdraw their service mark registration in the event of a final determination in this litigation that their use of the name "cornucopia" is generic.

tiff was listed in the "white pages" as "Cornucopia," followed by the word "gifts," and was included in the "yellow pages" under the "gifts" category.

Mr. Smith apparently first discovered defendants' proposed use of "cornucopia" on May 16, 1984, when he was shown a news article on the expansion and modernization of Crestwood Plaza which indicated that a "food court" called cornucopia was part of the project. The article stated that in addition to the restaurants, Cornucopia would feature "The Market," which would offer a variety of fresh and prepared food, including produce, coffees, spices, breads, pastries, imported beer and wine. The next day Smith called Crestwood Plaza and was referred to Wagman, who was unavailable at the time. Smith left the message "Walter Smith from Cornucopia" and his phone number. On May 18 Smith called Crestwood Plaza to see if his message was relayed to Wagman. He was apparently informed that it had been. Wagman did not call Smith, whom he thought was inquiring about available locations in the "food court," which was already fully leased. No other action was taken by plaintiff regarding Crestwood Plaza's use of "Cornucopia" until October 1984.

Sometime in late June 1984, while Smith was working at the Laclede's Landing Cornucopia, he had occasion to speak with Kristen Wellenkamp, whom he knew from his previous employment at Famous Barr. Ms. Wellenkamp informed Smith that she was currently employed with Crestwood Plaza, and he inquired about the mall's use of "cornucopia." She responded that Crestwood Plaza definitely intended to proceed with the "cornucopia" area, and referred Smith to the managing partners for further information, since she was not involved with the project. Ms. Wellenkamp subsequently informed Wagman that there was a shop called "Cornucopia" at Laclede's Landing. Wagman, relying on his service mark registration, told her "not to worry." Smith visited Crestwood Plaza on October 2, 1984, one day prior to the "grand opening" of the newly remodeled

mall and went downstairs to view the area designated as Cornucopia. He then proceeded to the Crestwood Plaza office and asked to speak to Wagman. Wagman met with Smith and showed him the service mark registration, to which Smith responded that he thought he had the prior right to the name because he had used it first. At that time defendants had already expended $160,000 to develop and promote their "food court" under the name "cornucopia." Wagman estimated at trial that a name change would cost in excess of $1,000,000.

■ As previously noted, plaintiff's principle complaint on appeal pertains to the alleged misuse of its "trade name." Our review of the cases reveals confusion by courts and writers between trade names and trademarks. However, the terms are not synonymous. Generally, a trademark is applicable to the vendible commodity to which it is affixed and a trade name to a business and its goodwill. We note here that the parties interchange the two terms, as did the defendant in *Katz Drug Company v. Katz*, 240 Mo.App. 739, 217 S.W.2d 286, 289 (1949). There, the court stated:

> [Defendant] fails to take into consideration the fact that the term *trade-name* is substantially broader than *trade-mark*. A trade-mark is generally described as a sign, device or mark by which the articles produced or dealt in by a particular person or organization are distinguished or distinguishable from those produced or dealt in by others, and must be affixed to the goods or articles; while a *trade-name* is descriptive of the manufacture or dealer himself as much as his own name is, and frequently includes the name of the place where the business is located; it involves the individuality of the maker or dealer for protection in trade, and to avoid confusion in business, and to secure the advantage of a good reputation; it is more popularly applied to the good will of a business, and need not be affixed to the goods sold. In other words, it is not regarded as a trade-mark in the strict technical sense. (citations omitted).

■ Words that are generic or "merely descriptive" generally cannot be exclusively appropriated as a trade name. *Missouri Federation of the Blind v. National Federation of the Blind*, 505 S.W.2d 1, 7 (Mo.App.1974). In connection with trade names, a generic term is one which is commonly used as the name or description of a type of business; it refers to a particular genus or class of which an individual business is a member. *See WSM, Inc. v. Hilton*, 724 F.2d 1320 (8th Cir.1984); *Miller Brewing Co. v. Heileman Brewing Co.*, 561 F.2d 75 (7th Cir.1977). The test for deciding whether a word has become generic is one of buyer understanding: "What do the buyers understand by the word for whose use the parties are contending?" *WSM*, 724 F.2d at 1325.

■ A "merely descriptive" term specifically describes a characteristic or trait of the business in question. *See Miller Brewing Co.*, 561 F.2d at 79. It should be pointed out that the proper classification of a term, as well as the issue of how a particular word has been used and how it is understood by the public, is a question of fact. *WSM*, 724 F.2d at 1325–26.

Plaintiff contends that "cornucopia" as used by it was neither generic nor descriptive. The trial court found that as used by the parties it was generic, and plaintiff's first point challenges that determination. Initially we note that under the standard of review set forth in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976), we must affirm the trial court's judgment unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless an error of law appears.

■ Fully mindful of the justifiable deference given to the trial court in cases such as this, we nonetheless conclude that the evidence did not support the court's conclusion that plaintiff and defendants used the term "cornucopia" generically. The trial court reasonably could and did find that "the word cornucopia is a common word appearing in the dictionary and meaning 'variety' or 'abundance'...", since such a definition was supported by the

testimony of Smith and Wagman as well as the dictionaries examined by the court. However, we cannot accept the further findings that "cornucopia" was used generically, and not descriptively. No evidence indicated that "cornucopia" is a term commonly used by the public to refer to a "food court" or a retail operation such as plaintiff's. "Cornucopia" is not the designation for the class of businesses of which plaintiff or Crestwood Plaza is a member. We believe the evidence, and indeed the trial court's other findings of fact, to be consistent with a conclusion that "cornucopia" was "merely descriptive" as used by the parties here. It describes and conveys important characteristics of the Crestwood Plaza "food court" and plaintiff's shops, in that both offer a wide variety and abundance of items for sale. The testimony of Smith and Wagman indicated that they chose "cornucopia" as a logo precisely because it was descriptive and appropriate. However, as we subsequently discuss, the protection accorded to generic and descriptive terms under the law of unfair competition is the same; thus the trial court's erroneous classification does not require reversal. In a court-tried case, the judgment of the trial court will be affirmed if it reaches the correct result, even if based upon erroneous reasoning. *Koedding v. N.B. West Contracting Co., Inc.*, 596 S.W.2d 744 (Mo.App.1980).

■ Having determined that "cornucopia" as used by the parties here was descriptive, we consider whether the trial court erred in entering judgment for defendants on plaintiff's claim of unfair competition. We first note that a term, although descriptive, may be entitled to protection. In *Bagby v. Blackwell*, 240 Mo.App. 574, 211 S.W.2d 69 (1948), the court stated:

It is true the name of plaintiffs' association is composed of generic or descriptive words. Ordinarily such words are not subject to exclusive appropriation in a name. Such words are generally public juris, and may be used by anyone in their primary sense. But when a certain com-

bination of such words as a name, in connection with the business of a particular trader, has by long use come to be understood by the public as identifying the business or products of that trader, such words so used as a name have taken on a secondary sense in which the prior user may have an exclusive right ...

*Id.* at 75.

It has been held that:

To constitute unfair competition in respect to a trade name two elements must be present. The name must have acquired the mentioned secondary meaning or significance that identifies the plaintiff, and the defendant must have unfairly used the name or a simulation of it to the prejudice of plaintiff's interests. (citations omitted).

*Better Business Bureau of Kansas City Advertising Club v. Chappell,* 307 S.W.2d 510, 515 (Mo.App.1957). Furthermore, as stated by the Supreme Court:

... either actual or probable deception must be shown, the true test of unfair competition being whether the defendant's acts are such as are calculated to deceive the ordinary buyer making his purchases under the ordinary conditions which prevail in the particular trade to which the controversy relates.

*Pan American Realty Corp. v. Forest Park Manor, Inc.,* 431 S.W.2d 144, 149 (Mo.1968). Whether or not a likelihood of confusion exists is a question of fact. *Missouri Federation of the Blind v. National Federation of the Blind,* 505 S.W.2d 1, 6 (Mo.App.1973).

We believe that plaintiff has failed to prove that "cornucopia" had acquired a secondary meaning and was understood by the public to mean its stores. A reading of the Missouri cases on the issue of secondary meaning reveals an emphasis on long and extensive use of the name. *See Bagby,* 211 S.W.2d 69; *Better Business Bureau, etc. v. Chappell,* 307 S.W.2d 510; *Shrout v. Tines,* 260 S.W.2d 782 (Mo.App.1953). Here, plaintiff's use, prior to defendants', was somewhat less than two years, a peri-

od of time which does not constitute long and extensive use in this case. Nor were there other factors which might establish the existence of secondary meaning. No surveys were introduced showing that the public understood the word "cornucopia" to mean its stores in the metropolitan area. Furthermore, the trial court found "there was no evidence that plaintiff's store[s] [have] become identified as the source of any goods emanating from Cornucopia. In fact, there was no evidence of any market recognition of plaintiff's store."

The evidence also supports the court's finding that plaintiff failed to prove a likelihood of confusion. The "cornucopia" area of Crestwood Plaza consists of various independent tenants conducting business in their own name. There is no store at Crestwood Plaza known as Cornucopia, and, as plaintiff itself established at trial, goods bought in the "cornucopia" area of the mall are not identified or marked with the term "cornucopia." Furthermore, unlike defendants, plaintiff does not sell food intended to be consumed on its premises. Clearly, there are numerous differences between the parties' businesses, notwithstanding the fact that some goods plaintiff carries are also sold by the non-restaurant tenants of Crestwood Plaza's "cornucopia." We also note a dissimilitude between the parties' logos, in that defendants employ a free-standing "horn of plenty" with various items of food and the word "cornucopia" appears in script.

In addition to considering the evidence presented at trial, the trial court, at the request of the parties, visited Crestwood Plaza and plaintiff's store in Kirkwood. It concluded that:

It is exceedingly unlikely that the purchaser of one of these articles at Crestwood Plaza, whether in the Cornucopia area or otherwise, would ascribe the source of that product to be plaintiff's establishment.

We must keep in mind that the law of unfair competition is designed to prevent "commercial hitchhiking" and "attempts to

trade on another's reputation." *Better Business Bureau, Inc.,* 307 S.W.2d at 514. "In so doing it strives to protect the buying public from deception." *Id.* Plaintiff has failed to establish that defendants are trading on its reputation or that the public is being deceived. Plaintiff has not shown that the public is patronizing defendants' "food court" because they believe it is affiliated with plaintiff's operation. The absence of proof of "secondary meaning," which establishes a reputation capable of protection, and the lack of evidence demonstrating a likelihood of confusion, is fatal to plaintiff's claim of unfair competition.

We therefore find that the trial court did not err in denying the injunctive relief sought by plaintiff in regard to its trade name, which, as previously noted, is the principal issue raised on appeal. We also find no error in the trial court's denial of relief on plaintiff's other claims.

The judgment is affirmed.

DOWD, P.J., and CRIST, J., concur.