DYNAMIC SALES COMPANY, INC.,
Plaintiff/Appellant,

v.

DYNAMIC FASTENER SERVICE,
INC., Respondent.

No. 57916.

Missouri Court of Appeals,
Eastern District,
Division Two.

Dec. 31, 1990.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 29, 1991.

Application to Transfer Denied
March 5, 1991.

James E. Hawk, Jr., Anne Hawk Donovan, Clayton, for plaintiff/appellant.

William Bruce Day, Brian McCallister, Wirken & King Bldg., Kansas City, for respondent.

GARY M. GAERTNER, Presiding Judge.

Appellant, Dynamic Sales Company, Inc., appeals an order of the Circuit Court for St. Louis County denying its petition for injunctive relief against Dynamic Fastener Service, Inc., in a suit based on trade name infringement and common law unfair competition. We affirm.

Appellant is a Missouri corporation incorporated in 1966 under the name Dynamic Sales Company, Inc. The primary business of the appellant involves the distribution of fastening devices and construction and industrial equipment. In May of 1967, the appellant moved to a location at 8610 Natural Bridge Road in St. Louis County, Missouri, where it has conducted its business for over twenty-two years.

Mr. Clarence Henderson, the president and general manager of appellant, testified at trial that the name "Dynamic Sales Company, Inc." was chosen because it was what he wished the company to be and that, to him, dynamic meant "aggressive, something unique, something different, something that's—that has the ability to be a dynamic influence." Mr. Henderson further testified that he believed the appellant was that type of company.

Respondent, also a Missouri corporation, was incorporated in 1972 under the name "John J. Perz and Associates, Inc." This business operated out of St. Louis. In 1976, the company was reincorporated as "Dynamic Fastener Service, Inc." and the business moved its warehouse to Grandview, Missouri, a Kansas City suburb. Respondent maintained its St. Louis offices until 1979, at which time it transferred its offices to its Grandview location. It was also in 1979 that the parties first became aware of each other's existence through trade association directory listings.

In 1985, respondent opened a new office in Bridgeton, Missouri, a suburb of St. Louis. The appellant then sent a letter to respondent demanding that it stop using the term "dynamic" in its corporate trade name. This suit soon followed.

The case went to trial on August 28, 1989. After a two day bench trial, the court entered judgment for respondent. This appeal followed.

Appellant's first contention is that the trial court erred in failing to find that appellant had acquired exclusive use of the term "dynamic." The parties agree that review of the trial court's order is pursuant to Missouri Rule 73.01 and *Murphy v. Carron,* 536 S.W.2d 30 (Mo. banc 1976). The decision of the trial court must be affirmed unless there is no substantial evidence to support it, unless it is against the weight of the evidence or unless it erroneously declares or applies the law. *Murphy,* 536 S.W.2d at 32. In addition, where, as here, the court fails to enter findings of fact, all fact issues are considered as having been found in accordance with the result reached. Rule 73.01(a)(2); *Nelson v. Baker,* 776 S.W.2d 52, 53 (Mo.App., E.D.1989).

■ As noted above, the appellant initially contends that it should have the exclusive rights to the word "dynamic." In resolving this question, this court must determine the strength of appellant's alleged trademark. Strong marks, those that are arbitrary and fanciful or those that are suggestive are inherently distinctive and may be exclusively appropriated as a trade name. *Bassbuster, Inc. v. Gapen Mfg. Co., Inc.,* 420 F.Supp. 144, 157 (W.D.Mo.1976). Weak marks, those that are generic or merely descriptive of a characteristic or trait of the business in question, on the other hand, are not entitled to protection absent evidence that the mark, by long use, has become known by the public as identifying the business or product of that trader. *Cornucopia, Inc. v. Wagman,* 710 S.W.2d 882, 887–88 (Mo.App., E.D.1986). In such cases, courts have held that, while the words themselves are not entitled to protection due to their generic or descriptive nature, the secondary meaning, developed and nurtured by the business in question, is entitled to protection as the property of the business "in the same sense that technical trademarks are property." *Furniture Hospital v. Dorfman,* 179 Mo.App. 302, 166 S.W. 861, 862 (K.C.Ct.App.1914). It must be stressed, however, that where a term is descriptive "the evidentiary burden necessary to establish secondary meaning ... is substantial." *Bank of Texas v. Commerce Southwest, Inc.,* 741 F.2d 785, 787 (5th Cir.1984).

■ The mark in the present case is certainly a weak mark. As the Second Circuit noted in *Supreme Wine Co. v. American Distilling Co.:*

> In order to qualify for trademark protection, a mark must be distinctive, that is, it must be capable of distinguishing the user's goods from others. Merely laudatory words, such as 'best', 'outstanding', or 'supreme' cannot of their own force indicate the source or origin of the labeled goods.

*Supreme Wine,* 310 F.2d 888, 889 (2nd Cir.1962). See also *Exquisite Form Industries, Inc. v. Exquisite Fabrics of London,* 378 F.Supp. 403, 410 (S.D.New York 1974). The same holds true for "dynamic." Further undermining the distinctiveness of "dynamic" is the number of companies listed in the telephone directory as operating in St. Louis under that same name—thirteen. As a weak mark, therefore, "dynamic" is entitled to little protection.

■ Having determined that "dynamic" as used by the parties here was a descriptive term, we next consider appellant's argument that the trial court erred in entering judgment for the respondent on appellant's claim of unfair competition. Weak marks are entitled to little protection. *Cornucopia, Inc. v. Wagman,* 710 S.W.2d at 887. As noted above, however, the weakness of the mark is not fatal if the owner can prove that the mark has developed a secondary meaning. Appellant claims that "dynamic" has secondary meaning by virtue of its advertising efforts and over twenty-two years of service. This argument misses the point, however. The secondary meaning in a trade name is not

established by merely showing that the mark is an old one or that it has been heavily advertised but by evidence that the mark has become associated in the *mind of the public* as identifying *the source* of the goods or services. *Cornucopia*, 710 S.W.2d at 887–88. As noted by the Fifth Circuit in the *Bank of Texas* case, "we recognize that it is not the amount of money spent on advertising that is important, but the result achieved with the money spent." *Bank of Texas*, 741 F.2d at 788.

In the present case, we are presented with two pieces of evidence to consider as proof of secondary meaning: The length of time that Dynamic Sales has been in business and the various types of advertising used to promote itself. While these factors are certainly relevant in determining the existence of secondary meaning, *Cushman v. Mutton Hollow Land Dev.*, 782 S.W.2d 150, 159 (Mo.App., S.D.1990), these factors merely go into the development of secondary meaning and lend credibility to other evidence of secondary meaning presented by the mark's owner. *Id.* at 159–60. The appellant offered no other evidence to the court of secondary meaning. There were no customer surveys taken and not even a single customer testified as to what they thought of when they heard the term "Dynamic Sales Company, Inc." There was simply no credible evidence to show that secondary meaning in this name existed.

■ Finally, this court turns to the issue of confusion. In connection with this issue, we must be mindful that the law of unfair competition is designed to prevent "commercial hitchhiking" and "attempts to trade on another's reputation." *Better Business Bureau Advertising Club, Inc. v. Chappell*, 307 S.W.2d 510, 514 (Mo.App., K.C.Ct.App.1957). In addition, evidence of actual confusion is not required to prove a likelihood of confusion, *Better Business Bureau*, 307 S.W.2d at 515–16, but where a mark is weak, evidence of actual confusion is important to prove "that the public is likely to be confused as to the source or sponsorship of the defendant's services." *Pan American World Airways, Inc. v. Pan American School of Travel*, 648 F.Supp. 1026, 1037 (S.D.New York 1986).

■ As evidence of actual confusion, appellant introduced several invoices that were meant for Dynamic Fastener Service, Inc. but were sent to Dynamic Sales Company, Inc. In addition, the appellant produced the testimony of witnesses from the companies that sent these invoices. Each of these witnesses knew that the appellant and respondent were separate unrelated companies and testified that the misdirected invoices were "clerical errors." Clerical or billing errors are not the type of confusion relevant in this case. "[T]he confusion which a plaintiff must prove 'may be confusion to product source, or confusion to sponsorship or affiliation.'" *Midwest Research Institute v. S & B Promotions, Inc.*, 677 F.Supp. 1007, 1004 (W.D.Mo.1988) citing *Hallmark Cards, Inc. v. Hallmark Dodge, Inc.*, 634 F.Supp. 990, 998 (W.D.Mo. 1986). The evidence presented here is simply not sufficient to support a likelihood of confusion. The absence of such evidence and the failure to show secondary meaning are fatal to appellant's claim of unfair competition. We affirm the decision of the circuit court.

CRIST and SIMON, JJ., concur.