Jeffrey and Crystal DOWNS,
Respondents,

v.

DIRECTOR OF REVENUE, STATE OF
MISSOURI, Appellant.

No. 57073.

Missouri Court of Appeals,
Eastern District,
Division One.

May 15, 1990.

Motion for Rehearing and/or Transfer to
Supreme Court Denied June 14, 1990.

Application to Transfer Denied
July 31, 1990.

James Artelle Chenault, III, Jefferson City, for appellant.

Gary Richard Sarachan, St. Louis, for respondents.

GARY M. GAERTNER, Presiding Judge.

Appellant, Missouri Director of Revenue, appeals from an order of the circuit court which reversed an administrative hearing officer's revocation of the respondent's, Jeffrey Downs', driving privileges for 60 days and respondents', Jeffrey and Crystal Downs', vehicle registration for 60 days.[1] We affirm.

On May 24, 1988, an officer with the Hazelwood, Missouri police department stopped Jeffrey Downs while he was driving a car registered in his and his wife's names. Mr. Downs failed to produce an insurance identification card when asked to do so by the officer. The nature of this stop by the officer is entirely unclear. The police then sent a notice to the appellant, Director of Revenue, as required under RSMo § 303.024 (1986), stating that Mr. Downs failed to produce the insurance

---

1. Respondents did not file a brief in this appeal.

card. Appellant selected this notice for processing pursuant to RSMo § 303.026.3.[2] On June 17, 1988, appellant sent the respondents' notice that Mr. Down's license and the parties' vehicle registration would be suspended on July 20, 1988, unless respondents produced evidence to show that they possessed adequate insurance on their vehicle.

An administrative hearing was held at respondents' request and respondents submitted affidavits in lieu of a personal appearance stating that they believed that they were insured on May 24, 1988, and also submitted an insurance form verifying coverage as of July 20, 1988. The hearing officer found that respondents' were in violation of Missouri's financial responsibility laws and on September 13, 1988, ordered that Mr. Downs' license and the parties' registration be suspended for 60 days.

Respondents filed a petition for review in the circuit court on September 23, 1988, and claimed inadequate notice of suspension, that the administrative agency could not accept a police report as evidence without corroborating testimony, that petitioner was illegally arrested, that petitioner was stopped without probable cause and claimed that certain portions of Missouri's financial responsibility laws were unconstitutional. On June 30, 1989, the court reversed the administrative revocations without entering findings of fact and conclusions of law.

■ Our review of the court's decision is controlled by *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976), which requires that we affirm the court's decision unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. *Id.* at 32. Since the court did not enter findings and conclusions, we will presume that the factual questions are in accord with the judgment and affirm the court's decision under any reasonable theory presented and supported by the evidence. *In re Estate of Bradley*, 665 S.W.2d 626, 629 (Mo.App., W.D.1983).

■ The difficulty with this case is that the statute does not clearly enunciate under what circumstances an operator's license or vehicle registration may be suspended. Under RSMo § 303.025, an owner of a motor vehicle registered in Missouri must maintain automobile financial responsibility in order to operate the vehicle. Before registering a vehicle in Missouri, the registrant must sign a statement verifying that the registrant has and will maintain insurance during the period of registration. RSMo § 303.026.2. Furthermore, an insurance identification card must be carried in the vehicle at all times and this card must be exhibited to any peace officer "who *lawfully stops* such operator while that officer is engaged in the performance of the duties of his office." RSMo § 303.024.5 (emphasis added). If this card is not shown, then the officer is to notify the appellant.

The statute which authorizes appellant to suspend licenses and registrations is RSMo § 303.041. This statute provides in part:

"If the director determines that the operator or owner of a motor vehicle has not maintained the financial responsibility required in section 303.025 as a result of a financial responsibility verification sample as provided for in section 303.026, ... the director shall thirty-three days after mailing notice to the owner or operator suspend the license of the owner or operator, or both, and all registrations of the owner's motor vehicles failing to meet such requirement."

This verification sample, to which the above section refers, provides that the appellant shall annually select a sample of registrations or licenses to determine the extent of compliance with the law and to ensure compliance. RSMo § 303.026.3. One of the permissible sampling techniques is the processing of uniform traffic tickets. *Id.* Since the sampling provisions of RSMo § 303.026.3 do not expressly require that the traffic tickets be the result of a "lawful stop", it could reasonably be argued that a suspension could result from an officer's stop of a vehicle absent any probable

---

**2.** All statutory references are to RSMo 1986, unless otherwise indicated.

cause. We refuse to read the statute in such a manner.

■ The statute which specifically deals with the requirement that an operator possess and display an insurance card, RSMo § 303.024.5, requires that the officer make a lawful stop of the vehicle. In order for a traffic stop to be "lawful" the officer must have had a reasonable suspicion that criminal activity was taking place at the time of the stop. *Wallace v. Director of Revenue*, 754 S.W.2d 900, 902 (Mo.App., W.D.1988).

The penalty for failure to produce an insurance card on lawful demand appears to be the possibility that appellant will shortly request proof of insurance; the failure to produce a card is *not* directly penalized. Thus, requiring that a lawful stop be accomplished in order for an officer to request an insurance card but allowing appellant to use the absence of a card after an unlawful stop to form the basis of a revocation would render the lawful stop requirement of RSMo § 303.024.5 meaningless. This would also allow the police to arbitrarily stop vehicles without probable cause.

Such arbitrary, discretionary stops were addressed by the United States Supreme Court in a case involving the arbitrary stopping of automobiles to check the operator's drivers license and registration. *Delaware v. Prouse*, 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979). In *Prouse*, the Court held that:

> except in those situations in which there is at least articulable and reasonable suspicion that a motorist is unlicensed or that an automobile is not registered, or that either vehicle or an occupant is otherwise subject to seizure for violation of law, stopping an automobile and detaining the driver in order to check his driver's license and the registration of the automobile are unreasonable under the Fourth Amendment.

*Id.* at 663, 99 S.Ct. at 1401. The court also recognized that Delaware statutes had a minimum insurance requirement and hinted that its holding would apply to random stops involving this statute. *Id.* at 658–59, 99 S.Ct. at 1398–99. We, therefore, hold

that in order for respondent's licence or registration to be revoked or suspended pursuant to RSMo § 303.041, as a result of a failure to produce an insurance card, the reporting officer must have conducted a lawful stop.

We are not unmindful of the case of *Henerey v. Director of Revenue*, 766 S.W.2d 486 (Mo.App., E.D.1989) which holds that the merits of a traffic ticket need not be addressed in order to support a revocation. *Id.* at 488. We agree with *Henerey* that whether a traffic violation can be proven is not relevant under Missouri's financial responsibility laws. However, the lawful stop requirement is contained specifically in RSMo § 303.024.5 and is a prerequisite to the validity of any detention of a vehicle. *See Prouse*, 440 U.S. at 663, 99 S.Ct. at 1401.

■ While RSMo § 303.026.4 places the burden of proving the existence of insurance upon respondents, the necessity that the insurance card is produced pursuant to a lawful stop can only be dispensed by appellant. In the case at bar, we find that the appellant failed to meet this burden.

The administrative hearing officer took notice of the "police report" that appellant entered into the record. However, the only such report anywhere in the record is a form entitled "failure to produce identification card" which provides vital information regarding the respondents, but it does not indicate any reason why the officer stopped respondent's vehicle. Appellant did not offer any other document or testimony which even alluded to a reasonable and articulable suspicion of any traffic violation. This form is not, by itself, sufficient to show that respondent was lawfully stopped.

Since we find that appellant did not carry its burden to show the existence of a lawful stop, we affirm the decision of the circuit court which reversed respondents license and registration revocations.

REINHARD and CRIST, JJ., concur.