Solon GERSHMAN, Plaintiff/Respondent,

v.

ST. LOUIS COUNTY, Missouri and Kenneth D. Morton, Assessor For St. Louis County, Defendants/Appellants.

No. 70684.

Missouri Court of Appeals, Eastern District, Division Three.

Dec. 16, 1997.

Motion for Transfer to Supreme Court Denied Feb. 9, 1998.

Application for Transfer Denied March 24, 1998.

Paula J. Lemerman, John Andrew Ross, St. Louis, for Defendants/Appellants.

Joe D. Jacobson, St. Louis, for Plaintiff/Respondent.

CRAHAN, Chief Judge.

St. Louis County and Kenneth Morton, Assessor for St. Louis County (collectively "Assessor") appeal a judgment ordering a partial refund of 1992 real estate taxes paid by Solon Gershman ("Owner") due to the alleged misclassification of his apartment complex as commercial property. Assessor maintains, *inter alia*, that the circuit court erred in ordering a refund because it lacked subject matter jurisdiction to reclassify Owner's property and order a refund and because Owner failed to exhaust his administrative remedies by appeal to the Board of Equalization and State Tax Commission. We reverse and remand with directions to dismiss the petition.

The property in question is a 154 unit apartment complex known as The Forum Apartments situated in St. Louis County. For the years 1991 and 1992, the complex was classified by Assessor as commercial real estate with a true value of $4,633,600 and, by application of the assessment ratio for commercial property of 32%, an assessed value of

$1,482,750. In July 1991, Owner appealed this assessment to the Board of Equalization.

In his appeal, Owner claimed that the true value of the complex was only $3,000,000 and that the assessed value should have been $960,000. After the Board of Equalization upheld Assessor's valuation, Owner appealed to the State Tax Commission. On the complaint form filed with the Commission, Owner checked the box indicating the ground for his appeal was "overvaluation." Owner expressly identified the classification of the property as "commercial" and did not check the box for "misclassification."

Owner and Assessor ultimately agreed upon a true value for the property of $3,100,-000. On December 16, 1992, they filed a stipulation with the Commission that the assessed valuation for *both* tax years 1991 and 1992 should be $992,000. The stipulation further recited that the reduction in value was due to corrections in the income approach to value.

On December 17, 1992, the Commission entered an order approving the stipulation. Assessor was ordered to value the property at $992,000 for the years 1991 and 1992. The Collector of St. Louis County and the collectors of all affected political subdivisions were directed to disburse the protested taxes presently in escrow in accordance with its decision.

In compliance with the Commission's order, Assessor adjusted the assessment rolls for 1991 and 1992 and issued revised tax bills for 1991 and 1992 reflecting the new assessed value of $992,000. Both bills included a surcharge applicable to commercial property.

On December 29, 1992, Owner paid the revised tax bill for 1992[1] accompanied by a letter of protest dated December 22, 1992. In the letter of protest, Owner erroneously asserted that the assessment was presently under appeal to the State Tax Commission. According to Owner, "[u]nder such appeal, taxpayer contends that the property is presently misclassified as commercial, when in fact it should be classified as residential pursuant to the Uniform Condominium Act under Chapter 448 of the Revised Statutes of

---

1. The taxes for 1991 are not at issue in this appeal.

Missouri." In fact, there was no appeal of the assessment then pending before the State Tax Commission either on the date of the letter or the date of payment, the prior appeal having been resolved by the stipulation approved by the Commission on December 17, 1992. Nor did Owner assert in such prior appeal that the property was misclassified.

In April 1993, Assessor wrote to all apartment owners in St. Louis County advising them of the procedures for seeking reclassification of their property as residential if it satisfied the guidelines set forth in *Morton v. Brenner,* 842 S.W.2d 538 (Mo. banc 1992). In *Morton,* the Missouri Supreme Court held that connected buildings could nevertheless constitute separate "structures" in applying the statutory definition of "residential property" if the common walls separating the "structure" met certain specified criteria. 842 S.W.2d at 541–42. In response, Owner filed an affidavit of a surveyor attesting that the structural walls met the criteria established in *Morton v. Brenner.* In May 1993, Assessor reclassified Owner's property as residential for 1993.

In July 1993, Owner's attorney wrote a letter to the Associate County Counselor admitting that subsequent to the settlement of the 1991–92 appeal before the State Tax Commission, Owner had paid his 1992 taxes under protest, raising the "new issue of classification." According to Owner's attorney, Owner's protest letter was in compliance with the Missouri Supreme Court's decision in *Morton v. Brenner.* Owner's protest letter, however, never mentioned *Morton v. Brenner.* Rather, as indicated above, Owner's protest stated that his protest was based on a nonexistent appeal to the State Tax Commission in which he claimed to be contending that the property should be classified as residential pursuant to the Uniform Condominium Act. Owner's protest letter made no mention of the nature of the property's structural walls.

On October 21, 1993, Owner's attorney sent Assessor "a formal written application,

in accordance with RSMo. Sec. 139.031.5, that the St. Louis County Assessor's Office refund those real estate taxes mistakenly or erroneously paid ($41,422.82) based upon the improper classification of the apartment complex by your office for 1992." [2]

A week later, on October 28, 1993, Owner filed his petition in the underlying suit seeking a partial refund of the 1992 taxes paid on the property in the amount of $41,422.82, based on Owner's calculation of the difference in taxes due if the property was classified as residential rather than commercial. The petition alleged two alternative theories of recovery: that the taxes were mistakenly and erroneously paid within the meaning of Section 139.031.5 RSMo 1993 Supp.[3] and that he was entitled to a refund of taxes illegally levied pursuant to Section 139.290. The trial court rendered judgment in favor of Owner in the amount sought, without interest, without specifying the basis for its decision. This appeal followed.

■■■ Our review of this court-tried case is governed by the familiar principles of *Murphy v. Carron,* 536 S.W.2d 30 (Mo. banc 1976). We must uphold the judgment of the trial court unless there is no substantial evidence to support, it is against the weight of the evidence or it erroneously declares or applies the law. *Id.* at 32. In the absence of findings of fact or conclusions of law, we assume the trial court resolved all issues of fact in accordance with the result reached. Rule 73.01(a)(2); *Dynamic Sales Co., Inc. v. Dynamic Fastener Service, Inc.,* 803 S.W.2d 129, 131 (Mo.App.1990). The judgment will be upheld under any reasonable theory presented and supported by the evidence. *Downs v. Director of Revenue,* 791 S.W.2d 851, 852 (Mo.App.1990).

■■■ As for Owner's claim that he is entitled to a refund of taxes "mistakenly or erroneously paid" pursuant to Section 139.031.5, Assessor urges that the trial court lacked subject matter jurisdiction to reclassify and reassess the property; that taxpayer's

---

**2.** On December 22, 1993, Owner's attorney sent an identical demand letter to the County Collector.

**3.** All statutory references are to RSMo 1993 Supp. unless otherwise indicated.

claim was barred for failure to exhaust his administrative remedies by appeal of the classification to the Board of Equalization and the State Tax Commission; and that taxpayer failed to plead or prove facts establishing that the tax was mistakenly or erroneously paid within the meaning of Section 139.031.5. For the first two contentions, Assessor relies principally on *Pessin v. State Tax Commission*, 875 S.W.2d 143 (Mo.App. 1994). We find *Pessin* to be dispositive.

In *Pessin*, as in this case, the owners of multi-unit housing complexes sought reclassification of their properties from commercial to residential without timely raising their contention that the property had been misclassified in an appeal to the Board of Equalization and State Tax Commission. We held that the action was barred for failure to exhaust administrative remedies, thus depriving the trial court of original subject matter jurisdiction to issue orders effecting reassessment or reclassification. 875 S.W.2d at 146.

■ The doctrine of exhaustion of administrative remedies requires recourse to an agency for relief as a condition for judicial relief where the agency is empowered to grant relief. *Id.; Sperry Corp. v. Wiles*, 695 S.W.2d 471, 472 (Mo. banc 1985). As we held in *Pessin*, classification is clearly an issue that can be raised before and corrected by the Board of Equalization and the State Tax Commission. *Pessin*, 875 S.W.2d at 146. Indeed, in *Morton v. Brenner*, Owner's principal authority for the contention that his property should have been classified as residential, the Missouri Supreme Court affirmed a determination of the State Tax Commission reclassifying apartments as residential. 842 S.W.2d at 539, 542.

■ Further, as Assessor points out, it has long been established that a circuit court does not have the discretionary authority to fix the value or assess property at any specific amount. *John Calvin Manor, Inc. v. Aylward*, 517 S.W.2d 59, 63 (Mo.1974). Although Owner's brief repeatedly attempts to characterize the judgment as a straightforward application of the residential assess-

ment ratio to the property value stipulated by the parties before the State Tax Commission, the fact is that in ordering a refund based on the alleged misclassification, the trial court implicitly made a determination of value as well. As discussed in *Pessin*, an assessment requires consideration of three components: classification, valuation and tax rate. 875 S.W.2d at 146. Classification is merely the starting point. In this case, it is abundantly clear that the value of the property of $3,100,000 agreed to by the parties in settling the valuation appeal before the State Tax Commission was its value *as commercial property*, based on the income approach to value. As Owner and his only other witness conceded at trial, however, that all other factors being equal, reclassification of property as residential rather than commercial will increase the property's value because the reduction in taxes will increase income from the property. Therefore, by calculating the refund by applying the residential assessment ratio to the value stipulated by the parties based on a commercial classification, the trial court implicitly determined that the value of the property would remain the same despite reclassification. The trial court has no authority to make such a determination, which was, for the foregoing reasons, erroneous in any event.

Owner seeks to distinguish *Pessin* on the ground that, at the time *Pessin* was decided, classification of the property was based on the "actual use" of the property rather than its form of ownership, thus requiring the administrative agency to use its expertise in determining "actual use." Here, Owner continues, it was not necessary for an administrative agency to use its expertise to determine the proper classification of the property in 1992 because Assessor had already determined that the structure of the building rendered it residential in 1993 under the same statute that was in effect in 1992 and it was undisputed that there had been no structural change in the interim. We find this attempt to distinguish *Pessin* unpersuasive. The basis of our holding in *Pessin* was not the necessity for the exercise of agency expertise to determine classification.[4] Rather, the ba-

4. This is not intended to suggest that there is any

less need for agency expertise in determining

sis of our holding in *Pessin* was the fact that the issue of classification was inextricably intertwined with the issue of value and was a matter for which relief must be obtained from the administrative agency. *Pessin*, 875 S.W.2d at 146.

Owner also directs our attention to cases which have held the doctrine of exhaustion of administrative remedies to be inapplicable to certain types of tax protests. In none of these cases, however, was the circuit court required to make any determination of classification or value. In *Crest Communications v. Kuehle*, 754 S.W.2d 563 (Mo. banc 1988), for example, the Missouri Supreme Court held that a taxpayer was not required to pursue administrative remedies to recover taxes "mistakenly or erroneously paid" pursuant to Section 139.031.5 where the taxpayer received no notice of increased valuation, thus depriving the taxpayer of the opportunity to pursue his administrative remedies and rendering the increase invalid. Likewise in *Ackerman Buick, Inc. v. St. Louis County*, 771 S.W.2d 343 (Mo. banc 1989), the court held a taxpayer could pursue a refund of taxes declared to be unconstitutional by the Missouri Supreme Court pursuant to Section 139.290 without following the procedures set forth in Section 139.031. *See also Council House Redevelopment Corp. v. Hill*, 920 S.W.2d 890 (Mo. banc 1996) (taxpayer may pursue claim of exemption from tax without exhausting administrative remedies where no issue involving valuation is presented); *B & D Inv. Co. Inc. v. Schneider*, 646 S.W.2d 759, 762 (Mo. banc 1983) ("[W]hen a taxpayer

does not question the valuation of his property, but asserts it is not subject to the tax, he need not appear before the Board of Equalization but may enjoin the enforcement of the tax.").

In this case, as in *Pessin*, Owner is not claiming that his property is not subject to the tax; he is complaining of "overassessment" due to alleged misclassification. *Pessin*, 875 S.W.2d at 146. Owner's exclusive remedy for such alleged "overassessment" is resort to the Board of Equalization and the State Tax Commission. Thus, Owner's claim for a refund of taxes "mistakenly or erroneously paid" pursuant to Section 139.031.5 fails to state a claim for which the circuit court could grant relief.

■ As for Owner's alternative theory that he is entitled to a refund pursuant to Section 139.290, Assessor urges that Owner has not and cannot satisfy the requirements of the statute because (1) the Missouri Supreme Court did not declare the tax imposed on Owner to be an "illegal levy" in *Morton v. Brenner*; and (2) Owner failed to prove that any of the funds collected pursuant to the alleged "illegal levy" were "either in the county treasury or within the control of the county commission" as required by Section 139.290. Assessor's first ground is dispositive.

By its express terms, Section 139.290[5] only applies in situations in which money has been collected under an "illegal levy" and so declared by the Missouri Supreme Court.

---

whether property should be classified as residential under *Morton v. Brenner*, which clearly requires a factual determination as to the structure of the property.

5. Section 139.290 RSMo 1993 Supp. provides:
139.290.   Illegal levy—refund
Wherever, in any county in this state, money has been collected under an illegal levy, the county commission of such county or counties is hereby authorized to refund the same by issuing warrants upon the fund to which said money had been credited, in favor of the person or persons who paid the same as shown by the collector's books; provided, that should the person in favor of whom any warrant or warrants are issued be dead or unable to appear in person, then the same shall be paid to his heirs or legal representatives; provided further, that said county commission or commissions may,

in their discretion, refund, in addition to the money collected, interest which may have accrued upon the same, not to exceed six percent; provided further that before any levy shall be considered illegal, it shall have been so declared by the supreme court of the state of Missouri; provided further, that the provisions of this section shall only apply to those counties in which the money collected under said illegal levy is either in the county treasury or within the control of the county commission; provided further that the county commission so refunding said money shall specify the time in which said money shall be refunded, and all warrants left on hand after the expiration of such time shall be by said county commission canceled, and the money and interest turned into the school fund of the county.

Contrary to Owner's assertion, the Supreme Court did not declare any levy, *i.e.*, any *tax*, to be illegal in *Morton v. Brenner*. What was at issue in *Morton v. Brenner* was a determination of the proper classification and valuation for assessment purposes of the real property to which the tax was to be applied. There was no challenge to the legality of the tax itself. Thus, Owner's claim under Section 139.290 likewise fails to state a claim for which the circuit court could grant relief.

For the foregoing reasons, we reverse the judgment and remand with directions to dismiss the petition.

GRIMM and HOFF, JJ., concur.